We'll hear argument this morning in Case 22-193, Muldrow v. St. Louis. Mr. Wolfman? Mr. Chief Justice, and may it please the Court, Jitanya Muldrow maintains she was transferred from the Intelligence Division to a different job in the Fifth District because she's a woman. That's sex discrimination, and it's unlawful under the plain terms of Title VII. Title VII bars an employer from discriminating against an employee with respect to the terms, conditions, or privileges of her employment because of the employee's sex. Respondent now concedes that a lateral transfer changes the terms, conditions, or privileges of employment. After all, a transferred employee cannot show up the next day and do her old job. Her job tests have changed, and that's the most basic term of employment. So the only question left is whether transferring an employee because of sex is discrimination against that person. It is. Discrimination against, by its ordinary meaning and under this Court's precedent, means worse treatment because of a protected characteristic. With that, statutory analysis is complete, which brings us to what 703A1 does not do. It doesn't require that an employer's conduct cause significant disadvantage, objective material harm, objective tangible harm, or the like. And contrary to the Eighth Circuit's understanding, as this Court observed in Teamsters, Title VII provides for equal opportunity to compete for any job, whether it is thought better or worse than another. The statute prohibits discrimination, period. If an employer transfers an employee because of a protected characteristic, that's discrimination, and it's prohibited by Title VII. The Court should reverse and allow Ms. Muldrow to prove her case. I welcome the Court's questions. Counsel, you said that in your opening remarks that worse treatment against a member of a protected class is a Title VII violation. What is the worst treatment? The worst treatment here is the discrimination itself. So differential treatment and worse treatment are almost invariably coterminous. And here, the worst treatment is she was treated differently than a male employee in the same circumstances, and we are prepared to prove that if we are given the opportunity. So it doesn't matter if her salary is the same, the work arrangements are the same. I know your argument in the briefs is that her assignments changed, but her pay did not and her rank did not. But none of that is necessary for you under your argument to make a claim. That is correct, Your Honor. The mere transfer is enough. Well, the transfer, we wouldn't say mere in this particular case with respect to Your Honor. Well, transfer alone. The transfer itself makes the claim actionable. If she was treated differently than a male employee would be under the same circumstances. So what work does the preposition against provide? It provides that the treatment has to be worse, and there may be circumstances in which it is worse. So how is it worse, though? I mean, you're saying two things. One, you say that the mere transfer is enough, and against adds nothing, or it requires that the treatment be worse. But I don't think beyond the mere transfer, you don't argue that you need anything else. That is correct with respect to that. So what work does against do? The word against is indicating that the operation of the conduct is against this particular employee. So that's the work that the word against is doing. It could be that it's just for emphasis, and there may be limited circumstances, as this Court indicated in Bostock, where different treatment among men and women is not necessarily discrimination. But by and large, when a male employee, if we're taking sex discrimination, is treated differently from a female employee in similar circumstances, or would be treated differently, that's discrimination against, in this case, the female employee. You referred to Bostock. And Bostock says the term discriminate against refers to distinctions or differences in treatment that injure protected individuals. So that formulation suggests that there are distinctions or differences in treatment that don't injure protected individuals. In other words, that the injury is an added thing that one has to show in a discrimination suit. Do you not read that statement that way? I do not. I think, generally speaking, the injury is the discrimination itself. That's this Court's decision in Heckler v. Matthews. I mean, it's a funny sentence to write, if that's what we thought. And then we can talk about whether, in fact, we can think about many kinds of distinctions and differences that don't injure anybody, or that don't injure that person, at least. But it's a funny sentence to write, distinctions or differences in treatment that injure protected individuals, if you think that all distinctions and differences injure protected individuals. Well, not necessarily all distinctions. But the way I would put it is that in the vast majority of circumstances, differential treatment and worse treatment are going to be the same thing. And that is that injury is going to occur in the vast majority of circumstances when there is discrimination. That's this Court's decision, I believe, in Heckler v. Matthews. That's, in a sense, a premise of the Brown decision that discrimination itself is injurious. And isn't terms and conditions of employment doing some work as well? I mean, you say that that's a conceded part of the statute with respect to how they're interpreting it. And I understand that. But I would guess that differential treatment with respect to the terms and conditions of employment may be what you mean when you say that discrimination is happening in and of itself. That is correct in this sense. I believe I take your understanding here, which is that terms, conditions, and privileges are a limiting principle within the 703A1, which is what the D.C. Circuit said in the Chambers case. That's the work that terms, conditions, and privileges are doing. So the statute does not reach conduct outside the workplace. I know. But I guess I'm inviting you to think about discriminate against as Justice Kagan was positing it. You know, she's highlighted a distinction between discrimination against someone that injures them versus discrimination that might not injure them. And I'm just wondering whether the fact that we're in the context of terms and conditions of employment does any work with respect to a determination that discrimination, differential treatment in this context, terms and conditions of employment, is inherently injurious from the standpoint of the point that Justice Kagan is making. Yes, I do take the point, and I think that is a possibility. But I'm putting it in a different frame, which is that terms, conditions, and privileges is a limiting principle within the statute, and that may indeed tell you what, in fact, is injurious in terms of 703A1. And I'm sorry if I'm just repeating questions, but it's a very obviously significant thing, and I found it extremely confusing looking at the briefs. You each say that the other concedes the point, and I don't see that that can be right. I mean, I don't know what the hypothetical would be. Let's say the transfer is from an office on this hall to an office on the next hall. They are identical. The responsibilities are identical. Everything is the same. One is a different paint color. And yet the person says, I'm transferring you from this office to that office because you're a woman. Is that actionable? There is no injury apart from, as you say, the fact of discrimination. Our position is, Your Honor, that that is injurious. And let me explain. When you say that is injurious, does that mean there is no separate requirement of injury or that everything I've said, nothing is different other than that the person is moved and the manager says it's because you're a woman. Everything else is the same. You say that there is injury there or that, I guess, you don't need injury. No, I would say there is injury there because there's discrimination. But let me explain why. I believe that the questions here are revolving around, I believe, whether there's some de minimis type exception to the position that we're taking. And there are, of course, de minimis things that happen in the workplace, trivial things that happen in the workplace. So if pink pens and blue pens are distributed to all the employees on a random basis, I think we can consider that trivial. But if they're distributed on the basis of race, immediately that becomes non-trivial. And I think most people understand that intuitively, that if those pens are distributed on the basis of race, that could be stigmatizing. In a sense, I realize that pens are not public education. But in a sense, that is Brown because Brown said, look, we're going to hold constant the question of any tangible harm. Our discrimination law has recognized for many, many years that there are stigmatic injuries. Even if it's a very, very minor thing, sending one set of people to one water fountain and another set of people to another water fountain is stigmatic injury. So I accept that point. But are you saying that all discrimination is stigmatic injury? Because you started with making people worse. I mean, there are differences and distinctions that people can make on the basis of protected characteristics that make people better off, right? I mean, if I decide one day that every woman in my workplace should get a raise, I mean, that makes women better off. That is correct. And if that is publicly known, that could be stigmatizing, in effect, both to the women and to the men. And can I explain why? To the women, it might be that if we're doing this solely on the basis of sex, the person might say to themselves, well, I earned this. I earned this raise. And now it's being meted out on the basis of my sex or race or national origin. Now, of course, in your circumstance, the men might have a cause of action as well. But the point is, is that stigmatizing, if it's done publicly, if it's done privately, it's still denigrating and demeaning, even if it is not stigmatizing. And, you know, that's what this statute is going at. But are you saying then if the employer wants to increase diversity in the workplace and so promotes, say, some black employees and they get better jobs, then that's discrimination? That opposes a – I want to answer that question, but I also want to say that that is not posed by this case. I understand that, but it seems to me the answer you just gave, Justice Kagan, would logically apply to that situation. Well, it's a difficult question because if an employer has an affirmative action plan, that calls up this court's decision in Weber and Johnson, and it would have to be evaluated in terms of the guidelines set out in Weber and Johnson. And so there is a separate category of analysis for – Okay, well, let me take the example you just gave and I'll put race to one side. The example you just gave, you said it would be actionable under Justice Kagan's hypothetical of all women promoted. What if it's we want to have a, you know, face first, we want women out there, we want to promote women, we want to show that we are friendly to women. Let's say it's a law firm and there's, you know, the numbers of female partners are low and so they want to bring that up. That's actionable? I'm not sure if this is – is this some sort of requirement? Well, I'm just asking you on Justice Kagan's hypothetical. Yes, I think that – It sounds to me like you were saying that was actionable. If there is a privilege of employment that is meted out on the basis of sex, that is actionable. And I think, you know, I can turn back to Justice Kagan's hypothetical. And, again, if women are being given raises just because they're women, then that is actionable and also, as I say, potentially stigmatizing to the women. And if it's being given out not to the men, simply on the basis of race, of course, they have a claim as well. I don't think the problem that's presented by this case, and it's a difficult problem, is whether there are forms of disparate treatment that are benign. I would say that all disparate treatment based on race, sex, et cetera, is wrong. But I think the insight, right or wrong, of the courts that have imposed something like a significant disadvantage requirement is that although disparate treatment based on one of these characteristics is wrong, there should be some sort of threshold before it gets into court. And that's where the de minimis idea comes from. But you say there shouldn't even be a de minimis exception. Well, that is our position. But I want to take your question in a couple stages, if I may. The first is a significant disadvantage rule and these others that are similar, objective, tangible harm, objective harm, and so forth, that you see in the circuits, have not been applied in anything like a de minimis way. And you see that as recited in our briefs, in the brief of the New York Legal Aid Society, at pages 24 to 27 of the LDF brief. Well, I don't want to interrupt you, but the issue is whether there should be some kind of threshold, whether it's de minimis, whether it's significant disadvantage, whether some other terminology is appropriate, some sort of threshold that has to be cleared before the matter gets into court. I mean, the employee says, on Monday morning, my supervisor always asks my similarly situated co-worker whether he or she had a good weekend, but the supervisor never says that to me. Is that actionable? That may not be a term, condition, or privilege of employment if this is not a requirement of the job. That may be separately analyzed under the hostile work environment type. But I don't want to evade the question. And so, again, our position is that you don't have to get to the de minimis question because discrimination itself gets over the de minimis hurdle. But I do want to go back to my first point. Isn't your point that terms, conditions of employment could not cover certain things like what Justice Alito just mentioned? It would still be, if you're treating someone differently on the basis of race, that's discrimination. Then the separate question is, is it a term or condition of employment? And some, you know, after-hours things or random things in the office that are more social than related to work are maybe not terms, conditions of employment. That's the analytical way to approach it. That is correct. That is one way to go about it, Justice Kavanaugh, and that's why my first-line response to Justice Alito was that might not have been a requirement of the workplace. But what is a requirement of the workplace? What is the definition of a condition of employment? Terms, conditions, and privileges of employment are any requirement or benefit imposed upon or withheld from or denied an employee. That's what a term, condition, or privilege of employment is. So if it's just a statement made in the workplace, I just don't think that is necessarily a term, condition, or privilege. All right. They gave me an office with a view of the alley instead of an office with a view of a park. Your Honor. That's a condition of employment. It is a condition of employment, and I must say, if that is meted out on the basis of race, all the employees of one race get a view of the alleyway, and another set of employees purely on the basis of race deliberately get a view of the city, a beautiful view of the city, that is discrimination under Title VII. Thank you. Thank you, counsel. If this is your position, I don't understand the bulk of your brief. The bulk of your brief talks about different locations, different facilities. She has to wear a uniform, different hours, no weekend, different access to superiors. Under your theory, all of that is completely irrelevant. And as far as terms and conditions of employment, that was not your argument in the brief. The argument in your brief was there's no requirement, and then you go on and list all these things that would count under normal circumstances, I would think, as adverse consequences. So why is all that in your brief if your argument is we don't need to show any of that? Your Honor, the reason that is in our brief is we were laying out the harm that these rules, like significant disadvantage, have done in the circuits. And this goes back to Justice Alito's question. Significant disadvantage, as this Court itself said in Groff, is nothing like de minimis. Well, but just to be clear, if none of that was in your brief, your argument would be the same. As far as we know, ours were the same. She did not have to wear a uniform. Access to superiors would be absolutely the same. Everything is the same, except... That is correct, Your Honor. Okay, so I should have skipped those changes. No, I don't think that is right. What we were attempting to do in our brief was to discuss the very things that have been coming up, the de minimis exception coming up in all the lower court cases, and with the expectation that we would be asked these questions. But if the Court narrowed the question to transfers, and if the Court wishes to decide this case solely on the basis of transfers, my client is perfectly happy with it. So we limited the question to transfers, and you gave us arguments talking about terms and conditions and the various ways in which there was actual injury. That is correct. Okay. Justice Thomas? Justice Alito? There are a number of significant differences between the two positions here. No question about it. But just to give you a hypothetical that is different but is perhaps related. So suppose the only difference between the two positions is one is a desk job and one is a job on the street. Okay? And interesting to me, that's what I'm interested in, to the street job, which is more dangerous and not interesting to me. That would qualify, right? Absolutely. What if it was the opposite way around? This particular employee said, I don't want to sit at a desk all day. I want to be out there in the real world. That would qualify as well. Justice Alito, absolutely. That is the Teamsters case. The court says in Teamsters that some people might prefer the line-driving position and some people might prefer the local position, and Title VII protects either of those choices against a determination by the employer of discriminatory intent. That is Teamsters. I mean, discrimination, I can't emphasize it too much, on any of these grounds is morally wrong. The question is whether it's the stuff of the district court case. And one more question. Some of our Supreme Court police officers prefer to work the day shift and some prefer to work the night shift. So if someone is transferred from the night shift, which a lot of people wouldn't like, to the day shift, that may be viewed as an injury by that particular officer. Right? And that would be enough. Absolutely actionable. That's the Threate decision in the Sixth Circuit. That's the Hamilton decision in the Fifth Circuit. And what if it's the other way around? Shift changes on the basis of race or sex are unlawful. Okay, thank you. Justice Sotomayor? Justice Kagan? I mean, just to make clear, I understand what you're saying. You're saying that there is an injury requirement, but that the fact of discrimination satisfies the injury requirement in all but the most extraordinary case. Well, yes. I mean, I don't want to put my toes in too deep, but this is what was reserved in Bostock and clearly does not have to be dealt with here, which is there may be deep-seated understandings that people never think of sex-segregated bathrooms as discrimination. That's correct. This goes back to the point I made earlier, Your Honor, which is that differential treatment is almost invariably worse treatment if it's done on a basis of a protected characteristic. Justice Gorsuch? There was some suggestion in some of the amici, we have so many amici, that employers might respond to a decision in your client's favor by redefining the terms, conditions, and privileges of employment so that you may be reassigned here, there, wherever. And I want your thoughts about that. And I'm not sure I understand the question, Your Honor, with all respect. No, no, fair enough. That's my fault. So what if an employer says your job isn't defined as sitting at a desk or walking the rounds around the building or whatever it may be or being on the beat, but it is defined as any of those things, so that it isn't a term, a condition of employment that you are a desk job or on the beat? And if the terms and conditions of privileges of employment... Can an employer define its way around the problem? I think the answer is no. If that determination that you're suggesting was made in response to a charge or a suit or... No, it would be made ex ante. So we hire all of our police officers, and you can be subject to any of these things. That is the suggestion of at least some of our amici. And that might be permissible, but I want to have two caveats. First, if there was evidence that that itself was done out of discriminatory intent, that would be unlawful. Secondly, if any given change within that broader context, so six months later a change is made, consistent with the literal terms of that, but done with discriminatory intent, that would be actionable under Title VII. That may be very difficult to prove, I understand, but that would still be actionable. I want to give you a chance to just flesh out your position, which I understand has been subject to some questioning this morning. That in adopting the Civil Rights Act of 1964, Congress sought to root out discrimination, root and branch, and that all of it is impermissible and presumptively injurious. That is our position, and if I could take you to the words of the statute as to why we know that so. The statute prohibits discriminatory hiring and discharging, and the purpose of terms, conditions, and privileges is to catch everything else between those two endpoints. And that's how we know that it's meant to eradicate discrimination in the workplace. It doesn't do it perfectly, but that's the intent. Thank you. Justice Kavanaugh? The amicus brief of the District of Columbia, joined by I think eight states, supports you, but says that it would be helpful if we were to rule for you that we repeat something the D.C. Circuit said, and it's in bank opinion and chambers. Quote, not everything that happens at the workplace affects an employee's terms, conditions, or privileges of employment, end quote. Are you in agreement or at least tolerate a statement like that? I think that is true, that not everything that happens in the workplace alters one's terms, conditions, and privileges of employment. I think that may be true of the hypotheticals that Justice Alito published. And on transfers, I think your point was, in the brief at least, that transfers are heartland terms, conditions, or privileges of employment. It's about the job itself. And that we don't need to resolve the outermost reaches of what terms, conditions, or privileges of employment would cover. Is that correct as well? A transfer decision to either withhold the transfer or to give a transfer is the functional equivalent of a hiring decision or a discharge decision. It is in the heartland of terms, conditions, and privileges. Thank you. Justice Barrett? So let's say that I think the phrase discriminate against carries with it, scoops in with it, some sort of injury. But I also think, you know, the QP was restricted to transfers, but I also think that you can look at a transfer, it must be looked at objectively, but yet in the eyes, because transfers can change depending on the eye of the beholder, right? You had some questions like that. I prefer the day shift, you prefer the night shift. But it has to be understanding all the facts and circumstances of, say, the young mother who wants the day shift so that her hours align with her children's hours or school. And, you know, the supervisor says, I don't really want to work with women and I'm on the day shift, so I'm putting you on the night shift. For her, understanding her facts and circumstances, an objective person in her situation would consider that injurious. I agree with that, but I do want to offer a caveat to that, which is so I certainly agree that a person in those circumstances is likely to view that as injurious. But you are suggesting there would be some sort of test that sort of marries subjective and objective, sort of objective but looking at it from the circumstances of the particular individual. And that worries me for two reasons. First, the statute doesn't train on that. The statute only asks questions about the employer's conduct. Well, I don't think it is. Let's see, I'm sorry to interrupt you, but I don't think the premise of your response is quite capturing what I think. I don't see it as a blending of objective and subjective because we do that all the time, like, say, in torts. It's the reasonable man. I mean, so we're trying to avoid the eggshell Title VII plaintiff, right? We're saying a reasonable person in the circumstance of the plaintiff would experience this as an injury. And I don't think that's a subjective inquiry. It's putting an objective inquiry but just familiar with the facts and circumstances. Okay, I accept that, that it's objective under your description of it, but I think that is not what the words of the statute call for. The statute asks three questions about the employer's conduct. Is it a term or condition? Is it with respect to a protected characteristic? And did the employer act with discriminatory intent? That's what the statute calls for. And my concern is also a practical one. I started reciting the pages of our brief and the amicus briefs. You see case after case after case under the so-called objective standards, the one that used to exist in the D.C. Circuit, the one that exists in the Eighth Circuit, where things wildly different than what anyone would view as de minimis are being thrown out of court. I'll end with this, which is that the Fifth Circuit in its recent en banc decision, 14 members of the court, said these doctrines are thwarting legitimate claims of workplace bias. Thank you. Justice Jackson? I guess I'm really confused and a little bit worried about your concession to Justice Kagan that there is some sort of injury requirement here. I look at the text of the statute and it seems to be doing what you said at the end with respect to Justice Barrett, which is identifying when there are unlawful employment practices. So the statute begins, it shall be an unlawful employment practice for an employer, and then we skip down, to discriminate against any individual with respect to the terms and conditions, et cetera, of its employment because of these protected characteristics. So to the extent that we are identifying sort of what is morally reprehensible, what is unlawful, I suppose we're just saying when someone discriminates with respect to these terms and conditions. So then the question, I guess, is what does it mean to discriminate? And I don't know that that necessarily means that there has to be some sort of injury. As I look at Bostock, we have a definition in Bostock that discriminate means roughly the same as it meant in 1964, quote, to make a difference in treatment or favor of one as compared to others. That doesn't necessarily mean injury. I am thinking of a scenario in which a person is fired or not hired or transferred because of their race, and it's not injurious. Let's say it's the best thing that ever happened to them because it was a terrible job, and they're fired and, you know, they go on to do great things in another area, and the defendant is going to say that. You weren't injured by my discriminatory firing. So I don't understand why injury is doing work in this analysis. Well, I don't disagree with anything you said, and if I made a concession, I certainly, of the type you're suggesting, I didn't mean to do that. What I am saying is that if there's an injury requirement, and there is some injury requirement to get over Article III, the injury is the discrimination itself. Right, but I'm sorry, can we just clarify, because to the extent you're talking about that injury, you're talking about standing injury, right? Well, I'm talking about discrimination being an injury unto itself in all but the most unusual cases. That was my back-and-forth. But that's just when it happens. I mean, Congress is just saying if discrimination happens, we have an unlawful thing. And so then the question is, what does it mean to discriminate? I thought we said in Bostock to treat someone differently because of this characteristic. Whether or not the person can go on to establish or has to establish that they were actually injured by that, I'm worried, and I thought that's what the issue was in this case. Do we have a separate element that a person who has been treated differently on the basis of race or sex or whatever has to also prove that that differential treatment injured them? What I would say is that they have to prove no injury other than the discrimination itself. There's no heightened harm required. There's no additional harm required. All right, and let me just ask you one last question about that. To the extent that we're worried that people who have not suffered any actual concrete harm as a result of this discrimination are bringing these lawsuits, I'm wondering whether or not that's not taken care of in damages. Because at the end of the day, you bring your lawsuit, and if you've been transferred to exactly the same position, you say that to a jury, and they say, fine, you might have been discriminated against, but your damages are zero because you haven't shown any harm for which you need to be compensated. Am I thinking about that correctly? That is correct, and we make this point at some length in our opening brief and reiterate in our reply brief that the idea that frivolous claims or marginal claims are going to come through is very unlikely. One needs to have damages to have a sensibly viable case to bring in federal court. And one of the reasons that we and amici talk about the kinds of cases that are being brought in the federal courts and being thwarted is they're all in the heartland. I mean, transfers may be most in the heartland, but we see cases about denials of training on the basis of race. So, indeed, that is the work of the stuff that the Chief Justice is talking about in this case, right? You want to show that this person actually was harmed in the sense that she could bring a case and get damages from the jury because something happened to her, but it's not an element of making the claim, correct? Absolutely correct. Thank you, Counsel. Ms. Brown? Thank you, Mr. Chief Justice, and may it please the Court. Forcing an employee to transfer because she is a woman is discriminating against her with respect to the terms and conditions of employment under Title VII, regardless of whether one position is significantly worse than the other. That's the plain meaning of the text, and it's consistent with this Court's longstanding precedence, which recognized that the statute strikes at the entire spectrum of disparate treatment in employment. The City fights against the clear text principally by claiming that the phrase discriminate against incorporates a significant disadvantage requirement. But to discriminate against simply means drawing distinctions that injure protected individuals, and this Court has repeatedly recognized that being denied equal treatment because of a protected characteristic gives rise to an actionable harm. That's all the statute requires. The City's contrary reading would permit employers to designate a predominantly Hispanic store, as in the Seventh Circuit's Auto Zone decision, to give only men their shift preferences, to pay black employees $1 less, or to relegate Muslim employees to the back of a store. Those results are inconsistent with the statute Congress enacted. The Court should reverse and instruct fellow courts to apply the text as written. I welcome the Court's questions. Can you have discrimination that is perceived by someone who you say that this is law enforcement and we need in this particular precinct more black or Hispanic officers, and so you are moved or transferred because of race? I think that that is a discrimination claim, and that would be actionable, and that would qualify. There is a bona fide occupational qualification exception, which does not apply to race. But won't that run headlong into the focus on diversifying the workforce in certain situations? So we think that there is adequate room within the bounds of Title VII to create opportunities for diversity and to ensure that there is a diverse workforce through recruiting, through mentorship, through programs. I'm talking solely about transfers now, that you need more black police officers in certain neighborhoods, say in St. Louis in the West Page or Cook area. No, I don't think that you can make a transfer on the basis of race, and I think that's the clear text of the statute, and that's what it requires. Congress has this bona fide occupational qualification standard. If there is a business necessity, but Congress expressly did not include race in that context. So if Congress made the judgment that there is no situation in which it's permitted or there is a business necessity or Congress thinks that that could be justified within the context of race. So simply making the selection or the transfer based on race or sex in and of itself becomes actionable. That is our position. Yes, that's our position. We do think that when an employment decision is made on the basis of a protected characteristic, that is the denial of equal treatment, and that's a harm that this Court has recognized in many cases, including Heckler v. Matthews, as my friend said. Allen v. Wright makes the same point. There are other cases as well, but we think it's the only harm that the statute addresses. Counsel, is there anything that Mr. Wolfman said with which you disagree? So I think that he, in a call with Justice Forza, she was talking about whether someone could change the definition of the conditions of employment or what the way the work or your job was defined. I think our position is that any kind of job assignment will necessarily qualify as a term, condition, or privilege of employment. It does not have to be set out in the way that the job description is written. And so I think that we think that it doesn't matter if the job assignment description is altered because of discriminatory reasons. What matters is whether this particular person was assigned new responsibilities based on a discriminatory basis. Can you see any transfer that wouldn't qualify as discriminatory, assuming that it was based, the chief positive one where you're going to be moved from one end to the other end of the floor, let's say. I find it hard to posit that the only difference would be the color of the wall. But it could be, as your colleague said, because one has a nice window and the other one doesn't. And I may think of that as de minimis. And some others might. So can you think of how we approach those situations, the situations that intuit, not this significant disadvantage one because I have a very hard time understanding how courts are thinking that switching somebody from a day to a night job or a Monday through Friday job to a rotating week-long job where you're not getting any weekends off anymore is not a significant disadvantage. But we'll put aside the facts of this case. How do we look at those sorts of things? So I think that by definition, if you are transferring somebody, if you're changing their office location, if you are altering their shift or anything like that, on the basis of a protected characteristic, that is inherently harmful. That is discrimination against them in the terms, conditions, and privileges of employment. And I think that that is actionable. I understand that there might be cases where the specific employment action itself seems minor. I think that those cases are perhaps a lot less likely to be brought, in part because of the damages concerns that Justice Jackson was pointing to. I think also in those cases it's going to be harder for, as an evidentiary matter often, for the employee to put forth sufficient evidence to show that there is a plausible inference that the office assignment was made based on a protected characteristic. And so that is going to help get rid of a lot of these kinds of claims on that basis as well. But what we think the inquiry should be focused on, and what the statute certainly focuses the inquiry on, is whether there is intentional discrimination, not on whether the particular employment action, so long as it fits within terms, conditions, and privileges, is of a sufficient degree to be actionable. But just to clarify your position, just so I understand it, even in your opening you did use words like injury or harm or worse off. I'm not exactly sure which ones you used, but those sorts of words. And we've used those sorts of words in several, many of our opinions. But what you're saying is that those words do not have sort of any independent consequence, that once you can show the discrimination, you've shown the injury, you've shown the harm, you've shown the being worse off, that there's no extra thing. Is that, am I reading you right? Yes. Again, in almost every situation, of course, we do recognize that there are some kind of distinctions that don't give rise, that they're generally viewed as innocuous. And so I would set those aside. But in the mine run case, when you are treating somebody differently, based on a protected characteristic, that is the injury. And what are you setting aside? Bathrooms. There are some kinds of dress codes that are generally viewed as equal, but they recognize that men and women wear different clothes, things like that. What is your definition of a transfer? So we don't have a definition of a transfer. The court reformulated the question presented to focus specifically on transfers. Nothing in our position changes based on how you view a transfer. I think most courts, or the kinds of transfers that are generally addressed, are a change in location, in responsibilities, in supervisors, things like that. So you want us to hold that it's always sufficient if it is alleged that there was a transfer on the basis of a prohibited characteristic, but you don't want to tell us what a transfer is. Again, I think that was a term that was introduced by the court. It's not a statutory term. But I think you could say when they're in the D.C. Circuit. I'm sorry to interrupt. How can we decide the case on that basis? Maybe it was unwise for the court to phrase the question that way, but the question is whether all transfers qualify. So don't you have to provide a definition of a transfer? So I would say that it is something like what I was suggesting. It's where the employee's responsibilities, job location, or supervisor have changed. I don't think it needs to be all three. So, for example, there's the Seventh Circuit's decision in AutoZone where an employee was transferred from one store to another on the basis of race. The allegation there was that the employer wanted to maintain a predominantly Hispanic store, and so they moved an employee over to another store to maintain that. The Seventh Circuit there held that that was insufficient under either Section 703A2 or A1. We think that's incorrect. We think that kind of a transfer would certainly qualify. So you're saying a transfer is covered because there will always be changes in conditions or terms. Well, then the transfer itself is not enough. You have to look at the conditions and terms. If it is from one place to another, it's a transfer, and if everything's the same, then under your position it wouldn't be covered. Because you look at there must be new conditions. There must be terms. And certainly if there are changes in conditions and terms, and many were documented, or at least at the summary judgment stage in the petitioner's brief, and that's a familiar inquiry and easy. But if you're saying that there always has to be a change in conditions and terms, that's one thing. Saying it doesn't matter whether there is or is not, so long as there's discrimination, it seems to me that's something different. So there certainly does have to be a change in terms and conditions of employment. We think that any time there's a transfer, there will necessarily be a change in terms and conditions of employment, because I take a transfer to mean at least a change in location, and we think the location is a part of the attendant circumstances that surround your employment. That's a part of your working conditions. The Court has recognized in Meritor and On Call and Harris that working conditions are a part of what is encompassed within terms and conditions of employment. So I think that by necessity, a transfer is going to fall into those categories. Okay. Thank you, Counsel. Justice Thomas? Justice Alito? Do you think it's helpful to say, quote, not everything that happens in the workplace falls within Title VII? Yes, I think that would be helpful and it would be appropriate. I agree with what the District of Columbia's brief said, that that phrasing has helped the lower courts, the district courts there, have sufficient leeway to continue to dismiss claims that are not actionable. That maintains the kind of... Okay, so then what things that happen in the workplace don't qualify? So I think that that phrasing refers to things like informal workplace interactions, isolated incidents. The Court in Harris, Monk, On Call, Meritor has referred to things like offensive and distasteful jokes, even if they are kind of sex discriminatory or racist in some ways. Single, one-off interactions like that. But you talk about one-offs in a footnote in your brief, but when you talk about harassment, you don't want to still import that statement here. I mean, that standard here, it has to be severe and pervasive. No, no, that's not what we're suggesting. In the footnote in our brief, we were explaining that I think one-off incidents in those cases, it's less likely that those are going to end up being actionable, even if it is a one-off situation that affects your terms and conditions of employment, simply because in those instances it's going to be harder, as an evidentiary matter, to put forth sufficient evidence to show that there was intentional discrimination. Well, what if the supervisor is always nasty to me because of my sex? Always. Does that qualify? That, I think, would be analyzed under the hostile work environment cases, and it would depend on whether the nasty treatment was severe and pervasive. Well, why does that have to be severe and pervasive, but there's no threshold requirement for any other form of workplace discrimination? So the court has explained that in the hostile work environment context, the question is whether there is a constructive alteration of the terms and conditions of employment, and so the question is essentially whether the employer has effectively required you to submit to that harassing treatment as part of the working environment that you're in. And I think a background kind of lurking factor in those cases is also whether the conduct that you're speaking about there is attributable to the employer as an employer, and the employer is not always going to be responsible for everything that the supervisor does. Okay, one last question. Suppose you're talking to a district court judge, and the district court judge says, look, every year I'm getting 500 new civil cases, and you're telling me that I cannot dismiss for failure to state a claim a case that alleges only really trivial disparate treatment. And you say, well, don't worry about that, because after discovery, I may be able to grant summary judgment, or after trial, the damages aren't going to be significant, and really that's not an answer to my problem. It's really helpful to me and consistent with what I think belongs in federal court, not what's moral and immoral, but what belongs in federal court, to be able to dismiss these trivial cases at the outset, as soon as I see the complaint. What do you say to that, Judge? So even after chambers in the D.C. Circuit, there have been cases that have been able to be dismissed on a motion to dismiss when there are conclusory allegations, when the facts still do not give rise to an inference of discrimination. You still do have to plead something that's going to help give rise to that inference of discrimination, whether that's a comparator in a similarly situated position, or whether that's other conduct that suggests that these minor employment incidents are attributable to discrimination. And so there are cases, we've cited some in our brief. I think the District of Columbia in its amicus brief cites additional cases from the district where those cases have been able to be dismissed. And, of course, discovery can be limited. Motions for summary judgment are often granted. And I would also say that even in a transfer context now, when the courts have required this kind of significant disadvantage requirement, you're always getting through or almost always getting through to summary judgment because courts have recognized that at least in some instances the change in position is sufficient. And so courts are addressing those then, too. Justice Sotomayor? Justice Kagan? Justice Gorsuch? Ms. Brown, in some of your discussions, a lot of what you said tracks what the D.C. Circuit said in chambers. And I just wonder, is there anything in that opinion with which you disagree? No, I don't think that there is. I mean, I think they set aside the question of whether there's a de minimis exception. Of course, we think that the court could do the same here. Any transfer is necessarily going to be, we think, more than a de minimis injury. In our view, we think that there probably is no real de minimis exception here because of the significance of the injury based on a protective characteristic, that that discrimination in and of itself, it seems hard to characterize as trifling or insignificant or hardly worthy of notice. But we think that the opinion by Judge Tatel and Judge Ginsburg was a very good opinion, and we do agree with it. That's what I thought the answer would be. In your colloquy with Justice Kagan, you briefly mentioned bathrooms and uniforms and suggested they might be okay. And I'm wondering how, under your theory of the case. So I think that there is this kind of narrow set of circumstances that I just referred to where their distinctions based on sex have kind of always been treated as innocuous. And I think those circumstances raise their own kind of special set of issues, and there are cases that might arise within that context where you question whether the specific set of bathrooms or the grooming standards fall within that innocuous kind of characteristic. Innocuous, by innocuous, do you mean non-injurious? Yes, exactly. So you think there is an injury requirement here? Yes, it's the injury that is inherent in unequal treatment in most circumstances. In almost any circumstance, when you're talking about protective characteristics, I think that there are some differences with sex and that this court has recognized those. Other courts have recognized those. The court hasn't really fully fleshed out, I think, like the theory behind that. If I had to guess, I think it would be. I'm not asking you to guess, but I'm asking for your help, so keep going. My sense is that the intuition behind the distinctions in those cases is that in the mine run case, a gender-specific bathroom or a uniform is not going to give rise to the kinds of stigmatic or dignitary harms that we usually associate with unequal treatment on the basis of sex. I think that there are obviously distinctions or there are cases when that won't be the case if the bathrooms are actually unequal, if the dress and grooming standards trade on sex stereotypes or are themselves more difficult to comply with for one sex than the other, then I think that you would be maybe outside of that kind of innocuous area. Do you at least think there are some circumstances in which those distinctions are permissible under Title VII? Yes, we do. Okay, thank you. Justice Kavanaugh? On bathrooms, dress codes, and grooming standards, though, you couldn't have, of course, different standards based on race. Of course not, and I think that kind of suggests that the question there is not, or the issue there, is not whether bathrooms or dress and grooming standards are conditions of employment and it's not whether distinctions with bathrooms and dress and grooming standards are too immaterial to be significant. It's just pulling out that we do think that sex is sometimes different. And then a couple times, just a little bit of a side point, but you said severe and pervasive when talking about harassment. My understanding, and this matters in some cases I've been on, it's severe or pervasive. That is correct. I apologize if I misstated that. And then third, at summary judgment, a lot of these cases are resolved, in my experience. Is that your understanding? Yes, that's consistent with what I've seen in looking through the cases that were decided in the D.C. Circuit after Chambers. The majority of the cases where summary judgment was at issue, the employer prevailed in those cases even then, and that's based on whether there's sufficient evidence of intentional discrimination at that point. And this is Justice Alito's question, but I think it's always been pretty hard to dismiss a case on 12b-6. Yes, I think that's correct. You don't have to plead the prima facie case, as this court has held, and so there are instances where you can get dismissed on 12b-6 if the facts there just aren't there. But in the minor enough cases, I think you are getting to the summary judgment even now. Thank you. Justice Barrett? I just want to be sure that I understand the government's position here. So the word discriminate can have no negative connotation. Like, I might have a discriminating palate, right? But because Title VII has the word against in it, discriminate against, it does carry some sort of injury. But the government's position, and maybe this is why bathrooms and grooming standards for men and women are different, the government's position is not that there's no injury, but simply that mere discrimination is the injury. And with race, that basically exists all the time. But with sex, it does not always exist because not every distinction between men and women is injurious. That's correct, yes. Justice Jackson? So just going back to Justice Alito's questions about trivial disparate treatment, I guess I didn't see those in the QP, and maybe I'm not looking at it correctly. I thought we had isolated the transfer determination in order to avoid having to say anything about whether or not there would be an injury requirement in a whole host of other situations to include the trivial or, you know, allegedly trivial scenario. So I thought our opinion could say whatever injury requirement might exist with respect to certain kinds of other kinds of employment determinations, we took this case to focus on transfers. And with respect to transfers, we hold, and I guess you would have us hold, that it's enough under the statute that a person is transferred because of these protected characteristics. They do not have to separately prove that that transfer because of those protected characteristics injured them or significantly injured them or whatever the court of appeals held here about the degree of injury. That's correct, and we have a footnote in our brief there as well that kind of sets aside these cases and says, you know, the respondent here, the city here has brought up a host of hypotheticals, and of course the court has narrowed the question presented and doesn't need to address any of those. I took some of Justice Alito's questions to be about whether a transfer could in some situations seem relatively minor. If you think that a transfer would incorporate, you know, a move from one office to another. All right, so let's take Justice Sotomayor had that scenario as well. Let's take that. You have the office, and one is red and one is blue. They're otherwise identical, and the person, the boss says, I think women should be in red offices. So I'm sorry, I know you picked the blue office as we went through, but I'm requiring that you sit in the red office because you're a woman. Is it the government's position that the woman would have to, in that scenario, not only prove that she was selected for this treatment because she was a woman, but also that working in a red office significantly injured her? No, our position is that the discrimination based on a protective characteristic is sufficient to show the harm that's required under the statute. Thank you. Thank you, counsel. Mr. Lowe. Thank you, Mr. Chief Justice, and may it please the court. The language used in the statute doesn't say discriminate between or discriminate with respect to. It says that the plaintiff needs to show both that they were subject to adverse conditions, their harassing conditions, and that those adverse conditions were imposed based on a protected status. But differences that injure the employee, specifically significant material objective harm. And reading section 703A1 to require harm is nothing new. For example, more than 25 years ago in Ancala, this court held that a plaintiff needs to show both that they were subject to disadvantageous conditions, their harassing conditions, and that those adverse conditions were imposed based on a protected status. And this court went on to say the severity and the negative impact of the conditions must be looked at through an objective lens, not based on personal sensitivities, not based on personal preferences. That approach is fully consistent with that of the Eighth Circuit here, and consistent with the approach adopted by pretty much all the circuits for the last at least 25 years. And reading discriminate against as requiring material objective harm is fully consistent with how this court read that very same language in section 704A in Burlington Northern. If that court looked to 703A1 precedent and the language of 703A1. Moreover, reading discriminate against as requiring significant material harm is a piece with the specific examples provided in the statute. Congress gave the initial examples of refusal to hire, firing an employee. Those are quintessential acts that are harmful to the plaintiff. A contextual principle that has been embraced by this court for a long time is that the Congress does not legislate as to trifles. So it's no surprise that this court has consistently read Title VII not to speak to minor slights or personal preferences of the employee or job actions with no significant harm. As Justice Scalia emphasized in Anchali, and as this court reiterated in Burlington Northern, Title VII is not a civility code. Here the Eighth Circuit properly held that the personal preferences for one assignment over another within the St. Louis police force, without more, cannot support the harm requirement of Title VII. And this court should affirm that judgment. I welcome your questions. You say there must be harm because of the addition, preposition against, discriminate against. But how do we quantify that harm? And if you are correct, or if you think it has to be a material harm, is there any difference between that and de minimis harm? Or is it one side of the same, different sides of the same coin? The other side argues that it's unclear what the standard means. It makes arguments that it's not administrable. But the courts of appeals have been applying that standard for at least 30 years. And have said that material harm means that there's something that is harming you as far as in the workforce. Your responsibilities, your chances for advancement. It can be your hours of work. It can be the significant different functions of the job. It's not a high bar. But there needs to be something more than mere personal preferences and subjective sensitivities of the particular employee. So it's a material, objective harm. It's through the lens of an objective employee, not the frailties of a particular sensitive employee. Donna Hall offices on both sides. The employer says I want the women on the east offices. I want the men on the west. Everything else is identical. Why isn't that a sufficient harm in the same way any type of segregation on the basis of race or gender is itself harmful? You're not really sure what the consequences will be in terms of perception. Or anything else. But it seems to be a certain violation of the statute. I think once you add into your hypothetical the overt discrimination. Then you get into the hypothetical like Justice Kagan's water fountain example. Where by protective status you're going to allow one group and not another. And it could be an office. And then you would look at it as Judge Katz has said in his dissent in the Chambers case. You'd look through the lens of the harassment, hostile workforce cases. As to whether that statement by the employee that women, you know, saying that they need to use one bathroom or another. That doesn't create stigma. But saying I want all women to be over here and I want all men over there. In certain circumstances can be stigmatizing. For example, one of the hypotheticals I'm going to give one protective status group just views of the alley. And I'm going to give others. Now you're having the same difficulty the other way as we had or at least I had before. I'm just asking about no discernible harm. And your answer is, well, there's a view of the alley. There's a view of this. I mean, am I going to have the same problem with you only from a different perspective? Because you seem to be answering questions in which there's no harm apart from discrimination by saying, oh, there is harm. Now, if the harm is the discrimination itself, that's one thing. Do you think that situation could arise? No, their argument conflates the intent and the harm requirement. You don't just satisfy the harm requirement by saying, but I think it was done to me because of my protective status. What I'm suggesting is there are some cases where what the employee is saying something overtly, as Justice Thomas said last term, that if you have a stigmatizing segregation in the workforce, it's inherently going to be injurious. So it's the stigma in certain circumstances which are based on the statements being made by the employer. What if it's not overt, though? So it's proved that that's what's happened, but it was never said. So the discrimination, after you go through discovery, is proved. This is what has happened. The women have to work in one place, the men in another, or the black employees are assigned to different offices. It's never said, though, so you can't just funnel it into harassment. Under your theory, that's fine. Under our theory, it is the statement being made by the employer which is stigmatizing. Exactly, but if you have a policy just never stated of I'm assigning the black employees to work outside in the heat as one of the cases, but it's never said, so you can't just funnel it into harassment. You would be like, that's fine, that's good to go. First of all, in that Fifth Circuit case, in that example, that would be certainly a disadvantageous term of condition of employment. So we don't have any disagreement with that. But that's why I think it's not a sufficient answer to just say harassment will cover this. Because it won't cover it in the cases where it's not a stated policy, but it is nonetheless a policy. Congress addressed that kind of categorical. One protected group, they get to do certain things, another protected group doesn't get to do certain things, under A-2 of the statute, which talks about classification, which talks about categories, talks about jobs opportunities. I don't think A-1 should be broken open and the harm requirement completely wiped out. Isn't A-1 about the intentional discrimination? I mean, I thought the difference between A-1 and A-2 is A-2 is about the effect, and A-1 is about the intent of the employer to make this classification, which is why I'm resisting your suggestion that there is any harm requirement, as opposed to suggesting there is, and perhaps it is being automatically satisfied. I'm sort of resisting that A-1 is asking anybody about whether or not the discrimination in this situation is causing someone to harm. So can you do my hypothetical about women in red offices and men in blue offices? The offices are otherwise identical, but we have a policy, whether orally stated or written or whatever, that women are in red offices. So if there was a woman who said, you know, I, for whatever reason, I'm, well, that's the policy. Women in red, men in blue, all right? Are you saying that in order to bring an actionable discrimination claim, a woman would have to say, I'm harmed by having worked in a red office, and then it would have to be sort of material and objective and all of the other things that you bring in to your harm standard? I would agree with that. I would say that they're not harmed unless they could show that the statement, the policy, is stigmatizing them. No, no, I understand. That assumes there's a harm requirement. You're sort of speaking to how you would go about establishing the harm requirement, and I'm trying to determine whether there is such a thing. So you're saying in a situation like the one I posited, that there is another element that the person has to show, and they have to show not just my boss said you're a woman, you're in the red office, no matter what. That's not enough. I would have to somehow marshal evidence that I'm being harmed by being put in the red office because of my gender. Is that what you're saying? That's correct, and I think it's actually fairly consistent with the position being taken by the other side here. That's how they get around the bathroom cases. They say, well, yeah, that's a distinction. You're not being allowed in that bathroom, but you're allowed in that bathroom. Well, Mr. Loeb, I think that that's not quite fair. I mean, the bathroom slash grooming cases, which first apply only in the cases of gender, but they're a really kind of discrete category, and the position that this side of the podium is taking is both simple and easy to understand in terms of Title VII's language, which is just to say that if there's discrimination, that counts as a harm. The discrimination is the harm, save for these very few exceptional cases. Now, what you're saying is, no, there has to be an additional showing of harm. We recognize, you say, that harm doesn't really have to be material because you're including stigmatic harm in that. So now a court is going to have to, like, wander around going, well, how big is this harm, and is it really stigmatizing, or is it only a little bit stigmatizing? And that sounds both like something that you don't want any court to do and also something that the statute does not suggest. Well, it's the kind of analysis which is done all the time regarding conditions cases under A-1. The harassment cases are conditions cases, and the courts say, not all conditions, even if based on a protective status, based on gender or race, even if it's based on that, the harassment is commonplace. But harassment is different, and it's different because there hasn't been a direct and actual change in terms, privileges, or conditions. You're doing the same job, you have the same supervisor, you have the same hours, you have the same everything. What we have said is, however, that constructively, and that's how you have to figure this out, there is a change because you're being subjected to something that might force you out of the workplace. Now, that's a very different situation from one where there's an actual change in terms and conditions. We disagree with that, Your Honor. I know you want us to disagree with it, but I don't see how you can get past the difference. Let me walk you through our reading of Ontale, which is, I think, clearly the correct one. So this is Justice Scalia's unanimous opinion 25 years ago under 703 elements, and responding to the argument that the court's approach was too broad, too liberal, at page 80, Justice Scalia holds that the challenged conduct must be because of a protective status, but then he goes on to say that not all conditions imposed by a protective status will qualify, and he says that's because of Title VII's text, referring to discriminate against. He says that text indicates that the statute only covers disadvantageous terms and conditions. So not all harassment that affects your conditions of employment, and even minor harassment, affects your conditions of employment, it needs to be disadvantageous, and of course then the court went on to reaffirm the objective standard. They argued that there's no harm requirement and subjective preferences, subjective sensitivities, all will support an action, and that's not only contrary to Ontale, it's directly contrary to how this Court read the very same language, discriminate against, in Burlington Northern, examining the Section 703 precedent and saying you need material objective harm. Same language in the same statute passed by the same Congress needs to be read the same way. Suppose there are two women associates in a law firm, and one says that the partner to whom I'm assigned is always nasty to me, invariably nasty to me, all the time, never friendly, always critical, making my life miserable by being nasty to me, and the other one says that they assigned me to an office with a view where I don't get the afternoon sun, and they assigned a similarly situated man to an office where they get the, which, is there a reason to treat those two women differently? I don't think so. Those kind of minor slights and grievances are what this Court in Burlington Northern warned that if you opened the door to those kind of lawsuits and had no meaningful threshold, the federal courts would become the super personnel department, not just for all private employers, but for state governments and for local governments. Well, I don't know that the woman who says that the boss is invariably nasty is alleging something trivial, but what I'm asking about is the suggestion that any transfer from one office to another qualifies, but if it has to do with unpleasantness in the workplace, then anything goes. I mean, there are cases about transfer from one side of the office to the other, and the courts of appeals have all held and the district courts have held that that is not a material objective harm. You know, if you've lost on some sort of express statement, I'm doing this because of race, I'm doing this because of protected status, then you start looking at it under a stigmatic approach of injury, but you don't want to micromanage every personnel action. The scary thing about your position is, and the S.G.'s position is very clear, everything that happens in the workplace, every assignment, pens, giving out pens to employees are going to trigger lawsuits based not just on... Well, let me focus you on the facts of this case and not the pens or the red office and the blue office, and I want you to put aside any quibbles that you have with the other side about the facts and the summary judgment record. This is different than the red office to the blue office. Okay, so she was transferred, and let's imagine here that you have evidence that her supervisor said, because he did replace her with a man, I just don't really like working with women. I want to work with a man, so I'm going to transfer you to this different district, and an objectively reasonable person in her circumstances, even though the job title and the money and all of that didn't change, would view that as less interesting, the job responsibilities changed, she lost access, putting aside the facts about, you know, the access to the unmarked car and the uniform changes in the FBI task force, putting all that aside. It was an objectively reasonable person would find that less desirable in her position because of the conditions of the employment, but you say not actionable. No, Your Honor, so let me just talk, there's two sort of parts to that. One is these change in the conditions about the car, about the hours, and all those things, which the district court- I want you to put that aside, just go with my hypothetical. If she had proven those things. Okay, but as I said, just assume the facts as I told you. Those could possibly certainly support an objective material change. I mean, Burlington Northern recognizes change in hours, particularly when you have a person who's a parent, and you look at those, like you said, when you're hypothetical, you look at the objective facts of the person, and then how a reasonable person would look at them. A change in hours can be, having a car can be- Change of responsibility. Change of responsibilities can be, if there's such a- The district court was expressive. She alleged that it wasn't prestigious enough, but she didn't prove it. The district court said if she had shown me any proof- So to you this is just a dispute about the facts as well? The facts are, the 8th Circuit and the district court ruled based on the fact that she didn't prove those things, she had waived those things by not briefing them at summary judgment, and then they have the- If she'd proved them, she should win. If she had preserved it and proved them, she may have had a meritorious case to get to a trial, but she did not. Instead, as the court of appeals said, once you've eliminated all the other things that were either attributable to the FBI, which includes the car and the hours, and you eliminate the things that she waived, all that's left here is her personal preferences. Instead of being in the Intelligence Division, she wanted to stay in the Intelligence Division over Department 5. She admits it's commonplace in the St. Louis Police Department to move people around based on safety needs. She herself has been moved several times in and out of the Intelligence Division. She admits when a new supervisor comes in, that they- So it's her preference, and let's say the supervisor, so let's say that she doesn't prove all of the other things that we're disputing and talking about here, like the FBI stuff. She says, I really like this job better, this is my preference, and he says, sorry, I prefer working with men. Then I think you would- that's the other half of your question, thanks for bringing it back to that, is you would have to examine that through the stigmatic lens and look at whether the statement there is labeling women as less than, is creating a workforce where people are unequal and it's harmful just to work in that environment. So it very could be that overt statement, whether it's stated to her or it's stated as a class matter, in which case you might have an A2 claim, might in some cases support the requirement of objective material harm. But what you don't get to do is litigate about every assignment in the workplace, every little, you know, whether you get this stapler or this pen, and to say, well, I think it's all being done to me for this reason, and now you get to get to summary judgment and you get to go on to trial because it's this court recognized in Bostock that the sorting out of two reasons for a job action is often hard to discern and is almost always going to go to trial. And so what you're going to be doing is having federal courts inundated with these claims with the inability to weed them out at an earlier stage. Are you aware of cases about pens or colors of offices? There are cases about moving from identical offices from here to there and the personal preferences- You know, I don't think when you're transferred from one office to another, one branch to another, that's a lot different, it strikes me. Surely that could satisfy the conditional question, is it contagious? Why would it satisfy the terms and conditions if you're transferred from one branch to another, one division to another, if all the pay is the same, the retirement system? If you move me from our appellate group to our tax group where I have no expertise, you know, it's certainly going to be a material change even though I'm not even changing offices. So you just have to look at the context of whether the responsibilities are different, whether the job change is disadvantageous to you viewed through an objective lens. That's a standard that the courts of appeals have applied for 30 years, let me give you an example, and it's a well-tried and tested standard. Twenty-nine years ago, Justice Sotomayor in the Williams v. R.H. Donley case as a Second Circuit judge rejected a transfer claim where the person said, I prefer to work in the Las Vegas office as opposed to here, and the transfer wasn't granted. The person said, well, this was being done on the basis of a protected debt. That's it wasn't granted, so it's a little bit different than being forced to move there. But can I just ask you a question? You say whether it is the job change is objectively disadvantageous, I think, is the standard that you're imposing. I'm wondering whether or not that same standard exists across all of the categories in sub one. In other words, does the person who's fired have to also demonstrate that that firing was objectively disadvantageous, and could the employer defend on the grounds that you went on and you got a better job, and, you know, it turns out this didn't hurt you at all. Is that the sort of logical thing that one could get into if we start suggesting that there's another element related to harm in this statute? I think there's an ambiguity about whether the discriminate against language applies to the first two listed items, hiring and firing, and it says, you know, otherwise discriminate in nasty conditions or otherwise. I think it's more naturally right to apply to it. I'm sorry. I thought we were reading the statute in the sort of way we do where all the things are similar. So it's hard to say that discriminate against would be that different, right? Yes, and I think discriminate against is modifying those as well. So if that's true, then we would expect the other two to work in the same way. So is it your position that we have a scenario in which a person who has actually been fired also has to demonstrate, based on objective realities or whatnot, that that firing was harmful to them? I think, as this Court has, as Justice O'Connor has said, that hirings and firings are quintessentially injurious. And why isn't this the same? That being treated differently, being forced to move to a different set of circumstances, which is how we're defining transfer. Because, as this Court said in Burlington Northern, while many transfers and reassignments will be injurious, not all will, and you need to look at the particular context. And so in a case like this, where someone is moved on a regular basis between departments and where the only thing she can point to as far as not less supervisory responsibilities, no different pay, no different conditions, no different benefits, and she's waived all these other aspects, and all you're left with is, I just prefer one over the other, that cannot be the basis of a federal lawsuit, Your Honor. Otherwise, you're just opening the door to anything. The premise of your argument, I think, is that discrimination itself is not a harm. I don't think it's impossible to read the statute in the very broad way they suggest. Let me explain to you a couple of reasons why you should not. First of all, it has been read that way, and it's been applied for 30 years in the Courts of Appeals. It's consistent with this Court's A-1 precedent saying there needs to be disadvantageous terms. But also under this Court's trifle doctrine, you don't lightly assume that Congress is legislating at some minor job actions, minor harms, personal preferences. I'm sorry, I don't understand your answer to Justice Kavanaugh's question. So, discrimination itself is or is not a harm? It's not by itself a harm. There's two elements here. There's an element of disadvantageous terms and harm. And often, they will run together in some cases. It will be easy to show the harm, but you just don't get to presume it. They say you just presume the harm in every case. Let me try it this way, Mr. Lowe. Good to see you. I understand your point that in Cali and further into Northern and elsewhere, we've said that discriminate means treat worse than, injure the plaintiff. Got it. But I think we've also kind of indicated in our cases that when you treat someone worse than another person because of race or sex, that's kind of the end of it. And there isn't a further inquiry into how badly you treated somebody worse. A minor treating worse on the basis of sex or race is something Congress in 1964, in a very short and sweet statute, 28 pages long but profound, said that the law will no longer tolerate. And once the courts get into the business of asking whether that injury is material or a reasonable person would be offended by it, it's a whole different extra textual layer that's going to weed out a bunch of claims based on a judge's sensibilities about how bad is bad enough. Thoughts? I strongly disagree with that. As Justice Scalia said, the language in the statute, the text itself, it's a textual argument. It says discriminate against. I'm spotting you all of that, right? I'm spotting you all of that. Discrimination against means treating somebody worse. That implies an injury. But Congress could say that any time you treat somebody worse because of their race or their sex, you have a claim. And then layering on top of that, where do we get that in the statute, a material harm? An objective person or a reasonable person or whatever construct we come up with that's artificial is going to weed out claims that Congress in 1964 thought profoundly important to include. Congress also, as this Court has recognized repeatedly, was trying to preserve management prerogatives and wasn't trying to open up the doors for every little action in the workplace to be brought. It was a balanced approach. And this Court should not lightly presume, especially given the trifle principle, which Justice Katz has explained applies with full force here, should not lightly assume that Congress wanted to completely conflate the harm and the intent requirement where basically you're reading the language discriminating against out of the statute. But isn't the trifle principle just inconsistent with the idea of stigmatic injury? I mean, we've recognized over and over again that discrimination itself can profoundly injure people. Just the fact itself that you're being treated differently from somebody else based on your race, based on your sex, et cetera. I mean, so as to anything, as to pens, as to water fountains, as to anything. The stigma flows from either the messaging from the employer saying, I am going to give all people of this protected status views of the alley. That's what they deserve. That's a stigma. And this Court has recognized in the harassment cases and outside of it that stigma is a material harm. And it can be looked at with an objective lens. And that is completely consistent with our opinion. But it doesn't mean just wipe away the harm requirement. And again, what work is the words discriminate against doing if you take that view? The statute says because of protected status. It could say change of condition because of protected status. You don't need the word discriminating against. Listen to their arguments. They're basically admitting that language has no force and is superfluous and is redundant. I thought it meant treat differently because of your race, let's say. And then does it, that itself is a harm. I've always assumed. And then the question becomes, does it relate to a term condition or privilege of employment? And not everything in the workplace will relate to a term condition or privilege of employment. The transfers I think clearly would. And then when you get past that, there might be some circumstances of remedial programs or what have you that you nonetheless justify why you're treating people differently. But the idea that you're treating people differently because of their race could not be a harm, not be discrimination. I don't really understand that. Again, you could just read the statute. You could either eliminate those words or just say discriminate between or with respect and not say against. And that last part of the statute, because of protected status, would be doing all the work and you would just presume harm because you did it because of that. And the first part of the statute, that part of the text is just being ignored. And look, where Congress wants to be more sweeping and to really root and branch, I think was Justice Gorsuch's language, they know how to do it. If you look at E16 in the statute, it was referring to the federal government as opposed to all private employers and state and local employers. They used broader language. Can I ask you a question? Are you suggesting that Congress had to include a harm requirement here? I mean, is it your position that it could not have focused in on the action, meaning make unlawful a circumstance in which the employer treats someone differently because of their race or gender? Let's just take out the word discrimination for a second. Are you saying that there had to be, maybe as a matter of constitutional authority or something, a harm that Congress was capturing with this statute? We think Congress could do that. The question is, did they do that here? Did they mean to open up for federal lawsuits for minor actions where there's no significant harm? No, no, no, I'm just asking. So if Congress had a value set that is similar to what others are focused on here, in which they thought that we are worried about employers that are treating people differently on the basis of these characteristics. We think that's a problem. Now, whether or not they thought it was causing other harm in the workplace or whatnot, we think that's a problem. So my question is, could they have legislated to address that particular problem? Yeah, and I think that goes to what I was saying about the federal government provision. I think they did a much broader provision there, which could be read that way. So there it talks about any personnel action, which is then defined under Title V, Section 2302B, to be discrimination for or against. And in E16, they say not just personnel action, but they make it very clear they want it to be sweeping. They say the workforce shall be free from any discrimination based on the characteristics. Thank you, counsel. Justice Thomas? Justice Scalia? Justice Sotomayor? Just so I'm clear, in responding to Justice Barrett, you said it's all a disputed issue. I didn't think it was disputed that in her intelligence work, she worked essentially 9 to 5, Monday through Friday, correct? Correct. When she moved or was transferred, she didn't have a 9 to 5 job. Her hours varied during the week and on the weekends, correct? Absolutely correct. It's not disputed that she had a private car in the intelligence division that was taken away from her when she went to the other position, correct? Correct. And there is no dispute that she had to wear a uniform where she wore plain clothes previously, correct? Now stop. Just answer my question. She alleges all those things but didn't argue them in summary judgment. Seems... Alright. Are they material? They certainly are. What wouldn't make them material? What objective facts would not make them material? You know, it's... I don't understand your test is what I'm saying. It's a change in the terms, conditions, and privileges of the two positions. You're saying we have to overlay that with some sort of objective test. Does that mean she has to prove that she has children at home at night? Or that she has to take care of her parents on the weekend? Are we then individualizing the test to find out whether she was somehow injured more than in her personal preference? I don't understand what you're saying. Well, in Burlington Northern, this Court said you look at the particular context of the individual and then see whether a reasonable, objective person would have found... Okay. You've answered my question. We're... Justice Kagan? Justice Kavanaugh? Justice Jackson? Okay. Thank you, Counsel. Rebuttal, Mr. Wolfman? Yes. Briefly, Your Honor. I want to pick up whether this discussion just left off because I think Justice Sotomayor's question and some of the earlier questions on the topic of what one has to show under these material harm-type, objective, tangible harm-type standards have been encapsulated by the D.C. Circuit's opinion in Chambers, and I want to mention it. These cases, meaning these types of cases, asking the question whether something is harmful enough, have consumed enormous judicial resources, seeking to answer a question far removed from the core Title VII inquiry, whether an employer has discriminated against an employee based on a protected characteristic. I would add to that far removed is an understatement. The statute doesn't pose that question, and that's the problem. But the use of judicial resources is an important point. So opposing counsel has said that courts have been applying these standards for 30 years. Some of the lower courts have. True. And the results are stunning. Autozone, mentioned by the Assistant Solicitor General. The Hamilton case. The Threed case, where there's a policy based on the color of the officer's skin, to quote Judge Sutton. I point the court to the amicus briefs that go through these cases in quite a good bit of detail. Just a few more points. As Justice Kavanaugh's question posed, if the policy is covert until discovery, then it doesn't impose a stigmatic harm. It imposes a purely dignitary harm. That, too, is actionable under Title VII. And it becomes stigmatic when it's uncloaked for all the world to see. But in either case, the policy violates the statute. The gender cases that we've been discussing, the exceptions, the outlier cases, do not help the city at all because every time you flip the scenario to race, religion, or national origin, the city loses. That shows those are outliers. The city's position is a cross-cutting position, and it is wrong. Unless the court has further questions. Thank you, counsel. The case is submitted.